### MAIRES v. NORTHSIDE METAL & MACHINERY CO., Inc., et al.

### In re LEHMAN et al.

#### (District Court, E. D. New York. December, 1914.)

1. FRAUDULENT CONVEYANCES ☞156—KNOWLEDGE AND INTENT OF GRANTEE.
   Stolen machinery, sold to L. as junk, was retaken by the owner, with the exception of nine tons, which L. had sold to S. The owner had L. arrested, and sued him and his partner, doing business as the N. Co., for the value of the goods disposed of. Within a few days thereafter the partners sold their junk business and property to L.'s father, S., and S.'s brother, who organized a corporation under the name of the N. Co., which took over the property and business. L. and his former partner's husband were the only men ever seen around its store. L. and his partner filed a voluntary petition in bankruptcy, scheduling no debts except the judgment obtained against them by the owner of the machinery. S. and his brother had dealt with L., and lived across the street from him; and S. would have taken all the junk, had the owner not prevented, when the nine tons had been delivered, and the incorporators knew, when they purchased the business, of L.'s trouble over the machinery and his arrest. *Held*, that the facts showed that the transaction was fraudulent, and for the purpose of covering up the disposition of the stolen goods and the effects of the bankrupts, which would be liable for any damages recovered against them, and that the sale was not as claimed in good faith.

   [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 495, 496; Dec. Dig. ☞156.]

2. FRAUDULENT CONVEYANCES ☞157 — KNOWLEDGE — GRANTEE — INCORPORATORS.
   Even though S. and his brother did not share in the knowledge of the entire transaction which was possessed by L.'s father, the goods having been used in the formation of the corporation, the responsibility of all would not be removed by such lack of knowledge on the part of one or more of the incorporators.

   [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 497–499; Dec. Dig. ☞157.]

In Bankruptcy. Suit by Samuel Evans Maires, as trustee in bankruptcy of Hyman Lehman and another, bankrupts, against the North

Side Metal & Machinery Company and others.    Judgment for plain-
tiff.

David Steckler, of New York City, for plaintiff.
Harry J. Sokolow, of Brooklyn, for defendants.

CHATFIELD, District Judge. .Suit has been brought by the trus-
tee in bankruptcy against three individuals and a corporation organ-
ized and owned by them, to recover the property transferred by the
bankrupts to the three individuals above referred to, or the value of
the property if the property be not in their possession.  A chron-
ological statement of the transactions is the first essential in consid-
ering the issue.

[1] One Michael L. Flank had some eight imported embroidery ma-
chines which he wished reconstructed and enlarged.  These machines
are of great weight and appear to have been constructed upon iron
frames in the neighborhood of 30 feet in length for each machine.
Flank agreed with Arnold Hoppe, under a contract made December 2,
1912, to reconstruct the machines as Flank desired.  The agreement
provided for advances to Hoppe, in case he needed funds during the
reconstruction, and Hoppe agreed to pay all the expenses, except in-
surance upon the machines.  Shortly after Hoppe took the machines
to repair, he sold them as junk.  It took some two months to deliver
the machines to Hoppe, and they were stored in four different places
in Brooklyn.  Shortly thereafter, Flank found the machinery in the
possession of Hyman Lehman, who claimed to have bought them from
Hoppe as junk.  Flank demanded them as stolen property, stating
that they were worth $12,000, and Lehman refused to deliver the
goods, claiming the possession of a bill of sale therefor.  But Flank
secured all of the machines, except nine tons, which had been sold to
Samuel Levine.  Flank then had Lehman arrested, but no indictment
followed, and Flank brought suit in the Supreme Court of Nassau
County against Lehman and his sister-in-law, Cillie Mass, who was
his partner, doing business as the North Side Metal & Machine Com-
pany, for the value of the goods which had been disposed of, as dam-
ages.  The complaint was served upon Cillie Mass on the 3d day of
May, 1913.

Subsequently, on or about the 1st day of November, 1913, Hyman
Lehman and Cillie Mass verified and filed a voluntary petition in bank-
ruptcy, accompanied by schedules showing no debts except the judg-
ment obtained by Flank in the Supreme Court of Nassau County on
October 17, 1913, for $2,086.53.  It also appears that upon the 10th
day of May, 1913, or just one week after service of the papers in the
suit by Flank, and prior to the appearance or answer of the defend-
ants therein, the partners, who subsequently went into bankruptcy, sold
by bill of sale the whole of their junk business and all of the contents
of their store, for $600 to Michael Lehman, who was the father of
Hyman Lehman, and to Samuel Levine and Ellis Levine, who were
brothers, and also in the junk business in Brooklyn.  Michael Lehman
furnished $400 and the Levines $100 apiece of the amount paid.  The
three men, Michael Lehman, Ellis Levine, and Samuel Levine then
proceeded to consult an attorney, and upon the 10th day of May, 1913,

organized a corporation under the name of the Northside Metal & Machinery Company, in which each was to take 50 shares, of a par value of $10 each, and were to constitute the directors, to do business at 248 Lorimer street in Brooklyn. The testimony shows that this corporation immediately took over the property and business purchased by the three incorporators from Hyman Lehman and Cillie Mass. Hyman Lehman has since that time worked for the corporation. He and Mrs. Mass' husband are the only men who have been seen around the store.

The trustee in bankruptcy in general charges knowledge on the part of all these individuals of the transactions above recited, and therefore claims that the formation of the corporation and the transfers of the assets were all part of a deliberate plan to evade responsibility for the secretion of the goods stolen by Hoppe, who failed to carry out his contract to reconstruct the machines and disposed of them as junk. The defendants not only deny knowledge on their part of the nature of the transactions prior to the possession by Hyman Lehman and Cillie Mass of the junk sold to them, but they also deny any intent in forming the Northside Metal & Machinery Company, beyond the ordinary business objects to be attained by an incorporation, and they also deny any guilty knowledge on the part of Hyman Lehman in his purchase of the machinery from Hoppe. But they did know of the arrest, and that Hyman Lehman had had trouble over his purchase from Hoppe. Samuel Levine would have taken all the junk from Lehman, if Flank had not prevented when the nine tons had been delivered.

It is apparent that the property of the partnership has been traced step by step into the hands of the corporation, and under the bankruptcy law, if such property were concealed by the corporation, or by those conducting the corporation, from the trustee in bankruptcy, for the purpose of defrauding creditors, the property itself could be recovered, or its value obtained in case it had been disposed of. The present action, therefore, would seem to be maintainable, and the only issue is the question of knowledge upon which the charge of fraud is based.

It would be immaterial if Hyman Lehman did not know whether Hoppe had a right to part with the machines, for the demand of Flank and the arrest of Lehman sufficiently put him upon notice. Even if Lehman could not avoid the criminal charge, he was responsible to the owner of the stolen property for that property and for the consequences of his acts. All persons dealing with him, with knowledge thereof, were also bound to respect his legal duties. The evidence shows that all of the parties including the three defendants, knew of this arrest, and the court must conclude that it would be beyond ordinary business transactions and the mental capacity of an ordinary person to purchase in good faith property for the alleged theft of which the son of the purchaser had been arrested and which he had been unable to dispose of to others. The Levines dealt with Hyman Lehman and lived across the street from him. One of the Levines had bought a part of the material for $72 before Hyman Lehman's arrest, and later bought out the business to dispose of his stock, which Lehman had been unable to sell to others.

In addition, the fact that this transfer occurred within a week after the beginning of the suit against the persons alleged to have possession of the stolen property, and the formation of the corporation within 24 hours of the sale makes it impossible to conclude otherwise than that the whole transaction was fraudulent, and for the purpose of covering up the disposition of the stolen goods and the effects of the bankrupts which would be liable for any damages recovered against them.

The property which had been removed by the Levines after the sale by Hoppe to Lehman in the first instance, consisted of about eight tons of material, and the balance was recovered at that time by Flank. From the standpoint of junk, the value of eight tons of material was comparatively small. Lehman and Mass paid but $275 therefor, and to do this they borrowed $300 from one of their family. But, as shown by the judgment recovered, the damage to Flank was great, and the trouble taken by these parties to avoid the loss of the amount paid for the junk which was then in their possession is out of proportion to the price paid, unless they were seeking to cover up the transfer of the property itself, and therefore to prevent the collection of the judgment by Flank.

[2] The amount put into the corporation by the incorporators was but $600. But even if the two defendants Levine did not share in the knowledge of the entire transaction which was possessed by their partner Lehman, it is evident that the knowledge of one partner as to a defect in title to goods purchased by the firm, follows the purchase and possession of the goods by the firm, and if thereafter those goods were used in the formation of the corporation, then the responsibility of all therefor would not be removed by lack of knowledge on the part of one or more of the incorporators.

It would seem that the defendants and the corporation should be held responsible for the return of the property, and, in case it is not in their possession, that they should account for its value to the trustee of the bankrupt estate.